In the matter of CHARLES A. TRIMBLE, a solicitor of the court of chancery.

[Submitted October 28th, 1915. Decided November 10th, 1915.]

Where a solicitor was retained March 8th, 1914, by a wife to secure a divorce, being paid a retaining fee of $25, the receipt of which he acknowledged in a letter promising to give the matter his immediate attention, and on July 25th, the wife, keeping an appointment in the solicitor's office, signed and swore to the petition for divorce and affidavit thereto, failing to hear from the solicitor thereafter until September 29th, when he wrote her saying that he would advertise in her matter October 6th or 7th, no proceedings in the suit being taken by the solicitor until March 27th, 1915, whether by filing the petition or discovering the husband's address for service, the solicitor's only excuse for the delay being that he was sick from some time in November until the end of the year, such attorney was guilty of fraud upon the client, and would be suspended from practice for one year; for, though mere delay in prosecuting a client's cause, unless so long continued as to be evidence of fraudulent conduct, does not afford basis to discipline a solicitor, nevertheless, when he receives a fee, especially when it is all he asks, on a promise to speedily prosecute, and does nothing whatever to that end, but, on the contrary, when asked by his client for information as to the status of the cause, falsely informs her it is pending, he is guilty of fraud upon the client and subject to discipline.

On order to show cause why respondent should not be disbarred or otherwise disciplined and punished.

This is a proceeding instituted on the complaint of one Gertrude Hawkins, the object of which is to strike from the roll the name of Charles A. Trimble, now a solicitor of this court. On the filing of her affidavit an order was made reciting the charges and requiring Trimble to appear before the chancellor at the

chancery chambers, in Newark, on Tuesday, September 28th, 1915, at ten-thirty o'clock in the forenoon, to show cause why he should not be adjudged guilty of malpractice as a solicitor of this court in the matter referred to in said order, and thereupon be debarred from further practicing as a solicitor or counselor of this court, or be suspended from practicing as such for such period of time as the chancellor might order, or be otherwise disciplined and punished for his misconduct, as may be deemed equitable and just.

*Mr. Nelson B. Gaskill,* for the prosecution.

*Mr. Foster M. Voorhees,* for the respondent.

HOWELL, V. C.

It appeared at the hearing that on March 8th, 1914, Mrs. Hawkins retained Trimble as her solicitor to institute proceedings for a divorce against her husband, and paid him a retaining fee of $25. On March 11th, 1914, Trimble acknowledged receipt of the $25 on account of his services by a letter written to Mrs. Hawkins on that date. He says in the letter, "I will give this matter my immediate attention, and you will probably hear from me within the next week or ten days." He adds: "Should you, in the meantime, ascertain your husband's whereabouts, I would be pleased to receive such information from you." On April 30th, 1914, Trimble writes to her that he has been unable to ascertain the husband's whereabouts, and advises her to write to his father, and says that if the father should fail to give the information, it would be necessary to adopt the course of serving the defendant by publication, and he adds: "I want to get the suit actually started within the next couple of weeks." On June 12th, 1914, he writes her that he thinks that they have made every reasonable effort to locate her husband, and that he can see no reason why they are not in a position to go forward with the suit; and on July 21st, 1914, he writes her to call at his office on Saturday of the "present week," that the petition for divorce will then be ready for her signature. She went to Trimble's office on July 25th and there signed and swore to a

document which must have been the petition for divorce and the affidavit thereto. It is important to remember this date and this transaction, because much in the case depends upon it. Mrs. Hawkins did not hear again from Trimble until September 29th. On that day he writes her that he will be prepared to advertise in her matter about October 6th or 7th, and that he would send her a copy of the advertisement as soon as it was inserted. Again he speaks of ascertaining Mr. Hawkins' whereabouts, and says that if she should ascertain in the meantime where he lived she should let him know promptly. In the meantime she wrote to him several times, in October and November, but was unable to get any reply until November 16th, 1914, when he writes her that her "letter of recent date," and her letter of October 24th, had been neglected by reason of his illness, that he was still confined to his bed, but was hopeful of getting out in a week or ten days, at which time her matter would receive his first attention; he regrets that she has become impatient and assures her that he will push the matter along as rapidly as possible. Not having heard from him, Mrs. Hawkins, early in December of 1914, wrote him another letter, which was replied to by his secretary under date of December 9th, 1914; she says that she has been unable to call Mrs. Hawkins' matter to Mr. Trimble's attention, for the reason that he has been ill. Nothing further was heard about the case until January 22d, 1915, when Trimble writes that he was in no position to take exception to her criticism, as her matter "had been somewhat neglected." He says that he was confined to his bed and unable to give any attention to business from November 7th, 1914, until the first of the year, that the delay was not entirely a faulty one. In reply to this Mrs. Hawkins writes him under date of January 26th apologizing for criticising him so severely, but that she looked forward to hearing from him in a week or ten days. On March 12th, 1915, he again writes her as follows:

"Replying to your courteous letter of recent date, I beg to advise you that I am now rapidly catching up with business, and I will be able to give your matter most serious attention next week. You may expect to hear from me within one week from this date."

And on March 27th he writes again:

"I am just dictating affidavits in your matter, which will be ready within two or three days. You will probably hear from me by Wednesday or Thursday of next week."

During all this period, from July 21st, 1914, when Mrs. Hawkins signed the petition and affidavit for divorce, down to the date of the last letter quoted from, no proceedings whatever had been taken by Trimble in the direction of procuring a divorce. The petition had not been filed, nor does it appear that Mr. Hawkins' address had been discovered. On April 2d, 1914, the petition was mailed to the clerk. The affidavit annexed to it was faulty in some particular, and on April 5th, 1914, the papers were returned to Trimble by the clerk, so that all the statements made by Trimble with reference to the divorce proceeding during this period were false. On April 29th, Mrs. Hawkins called at Trimble's office by appointment to swear to other affidavits to be used in her case. Although the day and the hour for the appointment were fixed, when she arrived at his office he had gone and left no word for her, and, in fact, she never knew until afterwards that no steps had been taken in the divorce proceeding. She made another appointment to meet him on July 17th, which he did not keep, and on July 21st she dismissed him and demanded her papers. He gave her all but two or three, and these were turned over to Mr. Gaskill after this proceeding had been taken.

These bald facts, derived almost wholly from the letters written by Trimble, exhibit a degree of neglect and carelessness for which the respondent offers no excuse whatever except that he was sick from some time in November until the end of the year, and that he was away from his office during the month of August. The facts bring the case within one phase of *In re Rosenkrans, 84 N. J. Eq. 232.* There the present chancellor says: "Mere delay in prosecuting a client's cause, unless, perhaps, it is so long continued as to be evidence of fraudulent conduct, does not afford the basis for disciplining a solicitor. Mere delay, without more, if brought to the attention of the court would, of

course, result in a reprimand and an admonition to the solicitor to proceed; but, when a solicitor receives a fee, especially when it is all he asks, upon a promise to speedily prosecute, and then does nothing whatever to that end—does not even start—but, on the contrary, when asked by his client for information as to the status of the cause, he falsely informs her that it is pending, and is being prosecuted with all convenient speed, in whatever words the idea is conveyed, he is guilty of fraud upon his client."

And this is the case in which I find Trimble. There is no pretence that he could have been mistaken. The falsehood communicated to his client, to the effect that the suit was pending, was deliberate, intentional and was calculated and intended for one purpose only, namely, to deceive her; and just why he should have entered upon this course he has, in my opinion, totally failed to explain. Not only should severe censure be passed upon him and his conduct, but he should be disciplined likewise, in order that his vicious example may not be followed by other solicitors who may have inclination to do so. The office of solicitor in this court is one of the highest degree of trust and confidence, and it may well be asked if a person cannot trust his solicitor, what relation between men can be appealed to? The order admitting a solicitor to practice law has been said to be a very badge of responsibility and honor. To a degree Trimble has forfeited this respect by an abuse of his privilege, and my recommendation is that he be suspended from practice in the court of chancery for the period of one year from the date of the order.